UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

The United States of America

                *ex rel.*

James Hannum,

                  Plaintiff,

     v.                                          Civ. No.: _____

Roadway Express, Inc. and
Yellow Transportation, Inc.,

                  Defendants.

_____

## **COMPLAINT**

        Plaintiff, the United States of America, *ex rel.* James Hannum alleges as its

Complaint against defendants as follows:

## **Introduction**

        1.      This is an action to recover damages, treble damages, and penalties on

behalf of the United States of America on account of false and fraudulent claims made or caused

to be made by defendants, their agents, employees, and co-conspirators, in violation of the

Federal Civil False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended (the "Act").  These

violations involved the intentional and systematic submission of false claims to the United States

of America, including several of its agencies and/or departments, for the purpose of getting

payments in excess of those to which defendants were lawfully entitled for shipment delivery

charges.

2.      Defendants Roadway Express, Inc. ("Roadway") and Yellow Transportation, Inc. ("Yellow"), and their employees, agents, and co-conspirators on their behalf, systematically submitted to the United States of America claims for shipment delivery charges that falsely and fraudulently billed the United States for the higher, inaccurate, weights of shipments set forth on bills of lading when defendants knew, after their own weighing, that the shipments actually weighed less.  As a result of these knowingly false and fraudulent claims, defendants received payments from the United States of America that were inflated, excessive, and unearned.

3.      The Act provides that any person who knowingly submits or causes to be submitted, or conspires to submit, a false or fraudulent claim to the United States of America for payment or approval is liable for a civil penalty of between $5,500 and $11,000 for each false or fraudulent claim submitted or paid, plus three times the amount of damages sustained by the United States of America from the payment of such fraudulent claims.  The Act's *Qui Tam* provisions further allow any person having information regarding a false or fraudulent claim against the United States of America to bring an action for himself (as the "relator") and for the United States of America, and to share in any recovery.

4.      Based on these provisions of the Act, James Hannum, as plaintiff/relator, seeks to recover damages, treble damages, and civil penalties arising from false claims made to the United States of America that were knowingly presented or caused to be presented to, and were paid by, the United States of America as a result of the acts of defendants and their agents, employees, and co-conspirators.

## **Parties**

5.      Plaintiff/relator, James Hannum, is and was, at all times relevant to this Complaint, a resident of Dunkirk, New York and the County of Chautauqua, within the Western District of New York.  James Hannum has personal knowledge of the facts alleged in this Complaint and is acquainted with defendants and their business practices.

6.      James Hannum has been employed by Roadway for 22 years at its Buffalo facility.  He is currently employed as a service planner, or supervisor.  For many years before his current position, he was employed as a weight and inspections supervisor.

7.      Hannum brings this action for violations of 31 U.S.C. sections 3729 *et seq.* on behalf of himself and the United States of America pursuant to 31 U.S.C. section 3730(b)(1). The allegations of this action are based upon Hannum's personal knowledge unless otherwise described as made upon information and belief.

8.      Hannum is the original source of the factual allegations of this Complaint within the meaning of section 3730(e)(4)(B) of the Act.

9.      Upon information and belief, Roadway is a corporation organized and existing under the laws of the State of Delaware, with principal offices for the transaction of business located at 10990 Roe Ave, Overland Park, Kansas 66211, and at 1077 Gorge Boulevard, Akron, Ohio 44309.

10.     Upon information and belief, Yellow is a corporation organized and existing under the laws of the State of Indiana, with a principal office for the transaction of business located at 10990 Roe Ave., Overland Park, Kansas 66211.

11.     Roadway and Yellow are subsidiaries of YRC Worldwide Inc., which is a publicly traded company headquartered in Overland Park, Kansas.  Upon information and belief, Roadway and Yellow, which have been sister companies since 2003, have recently been, or will soon be, merged into a single company.

## Jurisdiction and Venue

12.     Roadway and Yellow are doing business in this District and elsewhere in New York and are subject to this Court's jurisdiction.

13.     Upon information and belief, Roadway and Yellow are authorized to do business in New York.

14.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. section 1331 and 31 U.S.C. section 3732, both of which specifically confer jurisdiction on this Court for actions under the Act ( *i.e.,* under 31 U.S.C. sections 3729 and 3730).

15.     Venue is proper in this jurisdiction under 31 U.S.C. section 3732(a) because any one or all of the defendants can be found and/or transact business within the Western District of New York, and because violations of 31 U.S.C. sections 3729 and 3730

alleged in the Complaint occurred within this judicial district.  Venue is also proper pursuant to

28 U.S.C. sections 1391(b) and (c).

## **Allegations of Fact**

16.     At all relevant times, defendants were and are in the business transporting

shipments for a fee.

17.     Defendants, by agreements and with the approval of the United States of

America, have been and/or are authorized, upon request, to pick up and deliver shipments for the

United States of America, including those for the benefit of its departments and agencies.

18.     Over the last several years, defendants, under the terms of their

agreements and contracts with departments and agencies of the United States of America, picked

up and delivered certain shipments under various terms and conditions expressly and particularly

specified by the United States of America including, but not limited to, the places of pick up and

delivery, and the time and date by which the shipments were to be delivered to their destinations.

19.     When shippers like the United States government send shipments via

Roadway or Yellow, they submit the shipments along with bills of lading, which set forth the

shipment's weight — as initially determined by the shipper.

20.     Each shipment's weight, along with the distance that it must travel, are the

two factors that defendants use to determine the fee that they charge to the United States.

21.     Roadway's internal policies require it to conduct weight verifications,

whereby its employees, typically forklift operators (also known as "freight handling

professionals"), are to weigh each shipment to determine whether the shipper's stated weight, typed on the bill of lading, is accurate. Upon information and belief, Yellow has the same internal policies.

22.     After it is weighed, each shipment's actual weight — whether it is higher or lower than that stated in the bill of lading — is then entered into the respective defendants' computer system as a weight correction.

23.     From about 2004 to the present, Roadway has been processing its weight corrections solely to *increase* the amount invoiced when the actual scale weight exceeds the stated weight on the bill of lading. Roadway *deliberately prohibits* its computer system from *decreasing* the amount invoiced when the actual scale weight is less than that stated on the bill of lading.

24.     In other words, Roadway adjusts invoices upward for heavier-than-stated shipments, but set its automated computer system so that invoices are not adjusted downward for lighter-than-stated shipments, which are essentially ignored by the computer system. Instead, Roadway keeps the resulting overcharges.

25.     Upon information and belief, before about 2006, Yellow processed its weight corrections both to (a) *increase* the amount invoiced, when the actual weight exceeded the stated weight on the bill of lading, and (b) *decrease* the amount invoiced, when the actual weight was less than the stated weight on the bill of lading.

26.     Upon information and belief, sometime in about 2006, once Roadway's practice became known to its sister company Yellow, Yellow then deliberately chose to change its practice to mirror Roadway's, namely, to make upward weight corrections, yet ignore would-be downward corrections, thereby pocketing the resulting overcharges.

27.     Upon information and belief, Yellow's decision to adopt Roadway's fraudulent practice, and each defendant's decisions to maintain this practice, were executive-level decisions.  Upon information and belief, some of these executive-level decisions may have been made at defendants' parent company, YRC Worldwide Inc.

28.     Upon information and belief, Yellow's fraudulent practice, in place since about 2006, continues to this day.

29.     Upon information and belief, defendants have and continue to apply this fraudulent practice systematically to thousands of U.S. Government shipments.[1]

30.     This fraudulent practice also violates applicable tariff requirements, which require that, "[w]hen a carrier independently performs a shipment weight verification and discovers a discrepancy between the verified weight and the weight shown on the BL [bill of lading], it is the carrier's responsibility to obtain a BL correction notice from the origin TO [transportation officer]."

---

[1]     Both defendants, upon information and belief, automatically disregard minor weight corrections — both upward and downward — if they are less than about 30-40 pounds.

31.     By way of example, a shipment from Dover Air Force Base in Delaware to a munitions storage site in Oklahoma had 4,310 pounds as its stated weight on the government's bill of lading.  Roadway's scale then weighed the shipment at 3,345 pounds, but Roadway charged the government the full amount for a 4,310-pound shipment, resulting in an overcharge of approximately $222.84.

32.     Similarly, an exemplar shipment from Travis Air Force Base in California to an Army depot in Pennsylvania had 620 pounds as it stated weight on the government's bill of lading.  Roadway's scale then weighed the shipment at 220 pounds, but Roadway charged the government the full amount for a 620-pound shipment, resulting in an overcharge of approximately $133.23.

33.     In this manner, Roadway and Yellow systematically and fraudulently compute the amounts they are owed by the United States, and then charge these amounts via electronic invoices submitted through an electronic payment processing system called PowerTrack.  The amounts are then paid by the United States through this system.

34.     The United States of America, including the Department of Defense, the General Services Administration, and other departments and agencies, has paid and pays defendants for shipments that defendants know actually weigh less than the weight that the United States is charged for.

35.     Defendants' practices described in this Complaint constitute "claims" for payment submitted under the Act and, in particular, under 31 U.S.C. 3729(c).

36.     The United States of America paid defendants monies demanded through defendants' presentment of claims that contained overcharges.

37.     During the years at issue in this Complaint, defendants and their employees, agents, and co-conspirators, knowingly presented or caused to be presented false and fraudulent claims to the United States of America through the submission of requests for payment for shipments that weighed less than the amounts for which the United States was billed.

38.     During the years at issue in this Complaint, defendants and their employees, agents, and co-conspirators, knowingly made false records that directly resulted in improper and/or inflated payments being made by the United States of America for shipments containing overcharges.

39.     During the years at issue in this Complaint, defendants and their employees conspired and agreed among themselves and with others, both known and unknown, to create and submit for payment to the United States of America false and fraudulent claims for payment with knowledge and intent to defraud the United States of America and, during the relevant period, performed acts in furtherance of such conspiracy that ultimately resulted in the United States of America overpaying defendants for shipment delivery services.

40.     In particular, defendants submitted to the United States of America claims for payment for shipment delivery services that falsely and fraudulently represented that the amounts charged were based on weights that were verified to be accurate when, in fact, defendants, together with their agents, employees, and co-conspirators, knew that these

representations were untrue because these shipments actually weighed less than that represented by defendants.

41.     In connection with the submission of such false and fraudulent claims, defendants, together with their agents, employees, and co-conspirators, created false delivery invoices to support their fraudulent claims to the United States of America.

42.     As a result, defendants obtained payment for amounts set forth in the false and fraudulent claims submitted by defendants when such payments were in excess of what defendants would have been entitled to receive if the weight of each shipment was accurately and truthfully represented.

## <u>Count I</u>

### Substantive Violations of the False Claims Act
### [31 U.S.C. §§ 3729(a)(1), (a)(2), and (a)(7)]

43.     Hannum repeats and realleges each allegation of numbered paragraphs 1 through 42 of this Complaint as part of this First Cause of Action.

44.     Defendants, together with their agents, employees, and co-conspirators, presented and caused to be presented to the United States of America knowingly false and fraudulent claims for payment for shipment delivery services and, as well, knowingly created and made false records in connection with such fraudulent and false submissions.

45.     In addition, defendants in this way knowingly made, used, and/or caused to be made or used false records and/or statements to conceal, avoid, or decrease resulting obligations to repay the Untied States for these overcharges.

46.     As a result of the knowingly false and fraudulent claims submitted by defendants, together with their agents, employees, and co-conspirators, the United States of America overpaid for shipments that weighed less than that for which it was charged.

47.     As a result of defendants' knowing conduct and fraudulent overcharging, the United States of America has overpaid defendants substantial amounts of money, which total, at this time, is unknown but which can be expected to exceed several millions of dollars over the period relevant to this Complaint.

48.     As a result of the knowingly fraudulent conduct of defendants together with that of their respective agents, employees, and co-conspirators, defendants are liable to the United States of America for the amount of the overpayments made to it, trebled, plus penalties, interest, and attorneys' fees under the Act.

## Count II

### False Claims and Conspiracy
### [31 U.S.C. § 3729(a)(3)]

49.     Hannum repeats and realleges each allegation contained in paragraphs 1 through 48 of this Complaint as part of this Second Cause of Action.

50.     During the last several years, defendants and their employees knowingly conspired among themselves and with others, including defendants' employees and agents, to defraud the United States of America by causing false and fraudulent claims to be submitted and by knowingly making and submitting claims for payment that falsely charged for higher weight shipments that were, in fact, lighter, by submitting claims for payment to the United States of

America that defendants knew were false because defendants implied that their invoices would be accurate and based upon accurate weights as verified by defendants.

51.     In furtherance of the conspiracy, defendants entered into contracts for the transportation of shipments and created other records and documents substantiating such information, knowing that information to be false and untrue, with the intent to defraud the United States of America.

52.     Based upon the false and fraudulent claims submitted by defendants, the United States of America paid defendants in excess of what they were entitled to for the services they provided.

53.     As a result, the United States of America has sustained substantial damages directly related to overpayments made to Roadway and Yellow based upon false and fraudulent claims, and they are therefore liable to the United States of America for the amount of such overpayments made to them, trebled, together with penalties, interest, and the costs of this action, including attorneys' fees, as provided for by the Act.

## Jury Demand

54.     Hannum demands a jury on all issues and matters triable by a jury under this Complaint.

## Relief Requested

WHEREFORE, the United States of America *ex rel*. James Hannum demands judgment against Roadway and Yellow as follows:

a)      On the first cause of action, for treble damages under 31 U.S.C. § 3729(a)(1), (a)(2), and (a)(7) in an amount to be determined at trial, plus penalties, costs, interest, and attorneys' fees;

b)      On the second cause of action, for treble damages under 31 U.S.C. § 3729(a)(3) in an amount to be determined at trial, plus penalties, costs, interest, and attorneys' fees;

c)      On the first and second causes of action, for the damages sustained by the United States of America; and

d)      For award of such other and further relief as this Court deems proper as a matter of law or under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.


Dated:      Buffalo, New York
               November 3, 2008

**HODGSON RUSS LLP**
*Attorneys for James Hannum*

By:  s/Daniel C. Oliverio
        Daniel C. Oliverio, Esq.
        Joseph V. Sedita, Esq.
        John L. Sinatra, Jr., Esq.
140 Pearl Street, Suite 100
Buffalo, New York  14202-4040
Telephone:  (716) 856-4000