**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
**BUFFALO DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** *ex rel.* **JAMES HANNUM,** | |
| **Plaintiffs,** | **Case No. 08-CV-0811** |
| **vs.** | |
| **YRC FREIGHT, INC.; ROADWAY EXPRESS, INC.; and YELLOW TRANSPORTATION, INC.,** | |
| **Defendants.** | |

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE ROEMER'S**
<u>**REPORT AND RECOMMENDATION**</u>

Sean Cenawood, NY2463750
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
sean.cenawood@dentons.com

Stephen L. Hill, Jr., #MO36033
Sara M. Holzschuh, #KS24864
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
stephen.hill@dentons.com
sara.holzschuh@dentons.com
*Pro Hac Vice* Appearance

Defendants Roadway Express, Inc. ("Roadway"), Yellow Transportation, Inc. ("Yellow"), and YRC Freight, Inc. ("YRC Freight") (collectively, "Defendants"), by counsel and pursuant to Federal Rule of Civil Procedure 72, 28 U.S.C. § 636, and Local Rule of Civil Procedure 72, respectfully submit the following Objections to Magistrate Judge Roemer's Report and Recommendation ("R&R").

## INTRODUCTION AND PERTINENT BACKGROUND

Relator James Hannum (the "Relator") filed the initial complaint in this action, which the Government moved to seal, on November 3, 2008. (D.E. 1 & 2.) More than 10 years later and following no less than a half dozen Motions for Extension of Time to Consider Electing to Intervene, the Government filed its Complaint-in-Intervention ("Complaint") on December 12, 2018.  (ECF 72.)  It is uncontroverted and clear from the face of the complaint that, during that decade-long period, the Government, with express knowledge of the Defendants' interpretation of their obligations under the relevant rules and regulations, never refused to make a single payment to Defendants for the full amount of any invoice, and at no time initiated the various remedies afforded to it by law based on its purported view that Defendants' interpretation was erroneous, much less fraudulent.

The Government alleged in its Complaint that there were four contracts awarded to Roadway and Yellow by the United States Army Surface Deployment and Distribution Command ("SDDC").  (Compl. ¶ 29.)  The Government raised five causes of action for monetary recovery at issue in this Objection.[1]  Counts I-II are alleged violations of the False Claims Act, 31 U.S.C.

_____

[1] The Magistrate Judge has recommended that Count III be dismissed, with which Defendants agree and do not object.

§§ 3729-3733 ("FCA") against all of the Defendants, jointly and severally.  Counts IV-VI are common-law allegations of unjust enrichment, payment by mistake, and breach of contract.

As discussed herein, the R&R, aside from its proper dismissal of Count III, must otherwise be rejected in its entirety.  It contains significant legal error that, if adopted, would violate the Federal Rules of Civil Procedure and substantial due process, as well as unnecessarily multiply the time and resource costs that have already beset this over-a-decade-long proceeding.

## ARGUMENTS AND AUTHORITIES

### I.    Standard of Review of Magistrate Judge's R&R

A district court reviewing a magistrate judge's recommendations "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  With respect to recommendations on a dispositive matter, such as Defendants' Rule 12(b)(6) motion, the district court must review de novo all aspects of the recommendations to which a party has objected.  *See id.* ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.").

While an objection ordinarily may not simply refer to previously filed papers or arguments, the district court must review de novo prior-presented arguments where the magistrate judge committed legal error.  *E.g.*, *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 75–76 (E.D.N.Y. 2019); *Watson v. Geithner*, No. 11-CV-9527 (AJN), 2013 WL 5441748, at *2 (S.D.N.Y. Sept. 27, 2013) ("[A]n objection that a magistrate's purely legal ruling was faulty may require convincing the district judge of an argument that the magistrate rejected; the only way for a party to raise such arguments is to reiterate them."); *see also Moss v. Colvin*, 845 F.3d 516, 519

n.2 (2d Cir. 2017) (quoting *Watson* approvingly).

With respect to a magistrate's decision on non-dispositive matters, such as Defendants' motion to transfer pursuant to 28 U.S.C. § 1404, Rule 72(a) provides that a party may object and the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) and L.R. Civ. P. 72(a).

## II.    The Government's Remaining Claims Must Be Dismissed as a Matter of Law

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim that is "plausible" on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1943 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 8(a) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "A complaint's legal conclusions, even when they are couched as factual allegations, are not entitled to any assumptions of truth and should be disregarded." *Iqbal*, 129 S.Ct. at 1947, 1950-51; *see also Twombly*, 550 U.S. at 555. When there is an "obvious alternative explanation" for alleged conduct, liability "is not a plausible conclusion." *Iqbal*, 129 S.Ct. at 1949, 1951.

In the context of a Rule 12(b)(6) motion, a court may consider: (1) documents attached to the complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effect of which the complaint "relies heavily" and are thus rendered "integral" to the complaint. *United States ex rel. Coyne v. Amgen, Inc.*, 229 F.Supp. 3d 159,169 (E.D.N.Y. 2017); *see also United States v. Northern Adult Daily Health Care Center*, 205 F. Supp. 3d 276, 286-87 (E.D.N.Y. 2016).

### A.    The Government Failed To Plead Its FCA Claims With Requisite Particularity

As the Magistrate Judge correctly noted, the Government's FCA claims in Counts I and II sound in fraud, and are thus subject to the heightened pleading standard of Rule 9(b). (R&R, ECF 101, at 11.)   The Magistrate Judge also properly recognized that such standard required the

Government in its Complaint to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." (*Id.*)

However, the R&R then summarily concludes, without any citation to the Complaint or even this case's record, that "the Rule 9(b) requirement is relaxed somewhat when the relevant facts are peculiarly within the opposing party's knowledge." (*Id.*)  The Court is not permitted to "take the word" of the government in its opposition briefing that somehow unspecified facts are only in Defendants' knowledge, **especially when no such allegation is contained the government's actual pleading**.  Indeed, even the case cited in the R&R makes this clear: "Plaintiffs **must still set forth the factual basis for th[e] belief**" that "the necessary evidence of the essential elements of the claim is in the exclusive control of the defendant." *U.S. ex rel. Ellis v. Sheikh*, 583 F. Supp. 2d 434, 438–39 (W.D.N.Y. 2008) (emphasis added).

The government alleges that Defendants did not keep certain records between September 2005 and June 2010, as well as purportedly "hid evidence of their misconduct" (Compl., ¶¶ 84-85), but nothing about those allegations warrants the unsupported leap-of-logic that any supposedly relevant facts are "only" in Defendants' particular knowledge.  Instead, the Complaint explicitly pleads (and it is undisputed) that **Defendants do not have these supposedly relevant facts or records either**—there is no unequal access to them nor can they be "discovered" by anyone should this case proceed beyond the pleadings.  (Compl., ¶¶ 84-85.)  Thus, and crucially, the government cannot avail itself of some arguably "relaxed" Rule 9(b) pleading standard because it has failed utterly to plead why it did not keep its own records of transactions with and payments to Defendants.  Rather, the government, acknowledging its inability to satisfy the usual Rule 9(b) standard, disingenuously pushes the notion that such inability should be overlooked by

concocting—in its briefing, though tellingly not in its Complaint—a purportedly one-sided, unilateral record-keeping burden that, without any apparent basis, falls exclusively upon Defendants.

As the Complaint makes abundantly clear, these sophisticated parties (commercial entities and the United States government) transacted arms-length business with each other for over a decade. (*See* Compl. generally and ¶ 1.) The government does not plead (much less even attempt to explain) why it never reweighed any shipments at any point, notwithstanding its undisputed ability to do so under the parties' contracts/tenders and its mandate under black-letter law to verify and audit Defendants' charges (as discussed herein). Indeed, the government apparently did not reweigh or keep records even after Relator filed his *qui tam* allegations **over ten years ago**, and even though it is undisputed and clear from the Complaint and this case's docket sheet that the government received hundreds of thousands of pages of pre-intervention discovery and took dozens of depositions over the course of nearly ten years. Indeed, the government has and did use its subpoena power in these proceedings, and never once contended (in the Complaint, in prior proceedings, or in its briefing) that Defendants failed comply with the document or deposition subpoenas in any respect. The government did not and does not stand in the same shoes as some individual plaintiff who had zero ability to access this information prior to filing the Complaint— the government had great power and used it. Revealingly, even the R&R notes that "the United States intervened" in this action "[a]fter a lengthy inquiry." (R&R at 5.)

It is thus impossible that "only" Defendants could possess information pinpointing concrete payments the government contends were falsely claimed. Nothing in the Complaint suggests that the government appropriately lacked any information that it could have used to actually plead facts showing "false claims." Affording the government a "relaxed" pleading

standard when it has failed to properly plead its Complaint and in light of the undisputed record of proceedings, is not only in violation of Rules 9(b) and 12(b)(6), it is a serious miscarriage of justice.

This is particularly true where the government does not dispute, but the R&R inexplicably fails to address, that the government is basing its entire fraud case only on an unadorned list of shipments attached to the Complaint.  The government labels Exhibit A as "200 examples of the more than 13,000 false claims the Defendants billed to DOD during this period," but this is a mere legal conclusion that is not supported by any facts, much less facts satisfying Rule 9(b).  An actual review of Exhibit A to the Complaint renders its insufficiency crystal clear, since it is does not contain **any actual claim for payment, or any allegation that the claims were paid by the government** as is required to state even a bare-minimum claim under the FCA.  Instead, the six-page exhibit only identifies a delivery date, the DOD customer recipient, and a "weight variance"—without even connecting any of these shipments to a particular Defendant, or providing any other identifying information permitting Defendants to even look up the purported shipment (such as the government-issued commercial bill of lading number or the shipper's designated PRO[2] number, invoice numbers, and/or payment details).

Therefore, the Complaint fails to adduce "sufficient data to justify interposing an allegation on the subject" or "specific facts supporting a strong inference of fraud," and instead the government requests "license to base claims of fraud on speculation and conclusory allegations." *United States ex rel. Hanks v. U.S. Oncology Speciality, LLP*, 336 F. Supp. 3d 90, 118 (E.D.N.Y. 2018) (quotations omitted).  "[S]hifting the burden to [defendant] does not cure the pleading deficiency," where, as here, the Complaint's bare list of contracts and unspecified shipments

---

[2] A PRO number is a 10-digit unique identifier assigned to every shipment handled by Defendants, which is displayed on all shipping documents and labels.

indisputably "does not demonstrate that false claims must have been submitted." *United States ex rel. Kolchinsky v. Moody's Corp.*, No. 12CV1399, 2018 WL 1322183, at *2 (S.D.N.Y. Mar. 13, 2018) (quotation omitted); *United States ex rel. Bilotta v. Novartis Pharm. Corp.*, 50 F. Supp. 3d 497, 510–11 (S.D.N.Y. 2014) ("Plaintiffs must allege the false claims themselves with sufficient particularity . . . merely alleging a fraudulent underlying scheme with particularity is not enough.").

Defendants are at a loss to discern which, if any, of the 200 shipments or thousands of underlying tenders led to some kind of false claim by any one Defendant—which means the Court should be, too.  The R&R, however, fails to address the well-founded legal principle that simply alluding to an alleged scheme occurring over a period of time, without "the particulars of the false claims themselves," constitutes a *per se* failure to plead with specificity.  *See Corporate Compliance Assocs. v. New York Soc'y for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*, No. 07 Civ. 292, 2014 WL 3905742 at *11 (S.D.N.Y. 2014) (granting dismissal where the government alleged defendant hospital had lied 350,000 times but failed to allege the circumstances of false claims or identify any representative claim, asking "[h]ow can a hospital reasonably be expected to frame an answer to such a claim?"); *see also United States ex rel. Osmose, Inc. v. Chemical Specialties, Inc.*, 994 F.Supp.2d 353, 363-365 (W.D.N.Y. 2014) (a relator cannot circumscribe the Rule 9(b) pleading requirements by alleging a fraudulent scheme and merely concluding that, as a result, false claims must have been submitted); *Johnson v. The University of Rochester Medical Center*, 686 F.Supp.2d 259, 265-66 (W.D.N.Y. 2010) ("[S]tanding alone, allegations of violations of federal regulations or laws are insufficient if a plaintiff cannot identify with particularity any actual false claims submitted by defendant to the government.") (internal citations omitted).

Moreover, the government makes no effort to identify which specific individuals made the allegedly false claims. *See, e.g.*, *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer Servs, Inc.*, 778 F. Supp. 2d 37, 53 (D.D.C. 2011) (must identify individual actors and explain precise role in effectuating alleged fraud) (citing cases); *United States ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 889 (8th Cir.) ("[w]ithout information as to who and how and when, the defendants would be largely unable to respond"), *cert. denied*, 540 U.S. 875 (2003).

Lastly, even though Defendants submitted a Notice of Supplemental Authority, (ECF 96), the R&R fails to even address that, in *United States v. Strock*, No. 15-CV-0887-FPG, 2019 WL 4640687, at *5 (W.D.N.Y. Sept. 24, 2019) ("*Strock II*"), Judge Geraci found that the government's allegations that "Defendants knowingly submitted or caused to be submitted false representations . . ." were "group-pled allegations" that are "insufficient to satisfy Rule 9(b) and withstand a motion to dismiss." The *Strock II* court went on to find that:

> Without knowing exactly what [defendant] is alleged to have represented and when, it is difficult to infer that she knew her representations were false. This is why Rule 9(b) requires a fraud complaint to specify the fraudulent statements, identify the speaker, state where and when the statements were made, and explain why the statements were fraudulent. . . . Similarly, while the Government generally alleges that [defendant] submitted bids and invoices for SDVOSB contracts . . . it fails to identify the specific bids or invoices that [defendant] submitted.

Id. at *5. The Complaint entirely fails to meet this pleading standard, which the R&R impermissibly excuses, in a "purely legal ruling" that is "faulty" as a matter of law. *Watson*, 2013 WL 5441748 at *2; *Moss*, 845 F.3d at 519 n.2.

Since the R&R concluded that Rule 9(b) was satisfied based only on the "relaxed" pleading standard, (R&R at 15), and since the Complaint fails to plead any basis for a relaxed standard as discussed above and even per the case law relied upon by the R&R, the R&R must be reversed. Despite having nearly ten years to investigate, the government implausibly fails to allege the "who,

what, where, and when" of the allegedly false or fraudulent claims, violating Rule 9(b). Accordingly, Counts I and II must be dismissed for failure to state a claim with the requisitie particularity.

### B.      The Government Failed to Allege Materiality

The Magistrate Judge's recommendation should not be adopted, and instead dismissal should be granted because the law in this area was not fully developed at the time of the Magistrate Judge's consideration of the dispositive issues and "continued to evolve" thereafter—as a result, the district court has "the benefit of further clarification in this area . . . in cases presenting facts similar to this one." *Freeman*, 413 F. Supp. 3d at 73 n.2. As discussed above and herein, recent cases, "in combination with pre-R&R case law, signal a decided trend toward" dismissing FCA claims in circumstances similar to those here, and the Magistrate Judge's R&R necessarily contains legal error that should be corrected by the district court. *Id.* (declining to adopt R&R recommending denial of Rule 12(b)(6) motion in developing area of law, instead dismissing case).

The R&R references the United States Supreme Court's "demanding" standard for the materiality element of FCA claims set forth in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002-03 (2016). (R&R, 16.) However, in a direct departure from *Escobar* and relying on three non-precedential cases (including one not even proffered by the government in its opposition brief), the R&R inexplicably opines that the Complaint was *not* required to contain any allegations pleading how the alleged "weight difference would have changed, or did change, the payment decision, the Government's process for determining what it would actually pay, or examples of how the difference did [affect], or was likely to have affected[,] the Government's decision to pay Defendants' invoice." (R&R at 17 ("[t]he Court does not agree that this much is required at the pleading stage")).

In reaching that erroneous conclusion, the Magistrate Judge failed to analyze or apply the two recent *Strock* decisions. In *Strock II*, Judge Geraci found that "the Government does not allege that it expressly conditioned payment to VECO on VECO's compliance with SDVOSB contracting requirements" and "it is not clear from the amended complaint whether the contract terms or the certification on the payment applications explicitly conditioned payment upon VECO's SDVOSB status." *Strock II*, 2019 WL 4640687 at *9; *see also U.S. v. Strock*, No. 15 CV 0887, 2018 WL 647471 at *9-*10 (W.D.N.Y. Jan. 31, 2018) ("*Strock I*") ("The inquiry itself does not show that [Defendant's false statement and/or certification] was important enough to Plaintiff to warrant some level of investigation, but the Complaint fails to make any allegations that connect the investigation into [Defendant's statement and/or certification] to Plaintiff's payment determination. Nor does it provide any information regarding whether [Defendant] could have been terminated from the contracts it had already been awarded—thus barring receipt of claims for payment on active contracts").

*Strock II* even specifically discusses the line of case law relied upon in the R&R opining that "the misrepresentation does not have to be so grievous that the government would have completely denied payment upon discovering the truth," including *United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2017 WL 4326523, at *8 (S.D.N.Y. Sept. 27, 2017).[3] However, *Strock II* correctly finds, as the R&R should have here, that the Complaint "does not reference any factors that the Government might have considered to determine whether to pay" Defendants and "does not make any allegations regarding the substantiality of the [contract]

---

[3] The R&R also fails to address that *Hussain* was relying on *United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772 (S.D.N.Y. 2017), which was reversed and remanded by the Second Circuit. 899 F.3d 163 (2d Cir. 2018).

violation or whether it went to the essence of the bargain." *Id.* at *11.  In this case, the Complaint similarly contains no facts as to how Defendants' alleged violations were material to the government's payment decision, instead generally alleging Defendants' conduct somehow "was *capable* of influencing DOD's payment decisions."  (Compl. at ¶¶ 105 109; Opp. at 20.)   It is insufficient, however, to plead the government "would have the option to decline to pay if it knew of the defendant's noncompliance[.]" *Escobar*, 136 S. Ct. at 2002.

Again, this is particularly important in this case because it *undisputed* that the government has known of Defendants' approach to negative reweighs for *at least ten years*.  (Relator's Compl. ¶¶ 24-25.)  The R&R inappropriately credits the Complaint's single conclusory statement that "DOD officials were unaware that the Defendants had overcharged the government for shipments" in paragraph 110 of the Complaint, but ignores that the government also does not dispute that its own Complaint contains no allegation that the government refused to pay Defendants' claims or signaled a change in its position toward payments, and instead alleges it *continued to accept tenders.  See United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027, 1032, 1034 (D.C. Cir. 2017) ("courts need not opine in the abstract when the record offers insight into the Government's actual payment decisions" and "should not ignore what actually occurred: the [government] investigated [relator]'s allegations and did not disallow any charged costs.  In fact, [defendant] continued to receive an award fee . . . even after the Government learned of the allegations.").  Relying again on three non-precedential and out-of-circuit cases, and even cases not presented by the government, the R&R decides that even "assuming the Government knew and continued to pay Defendants despite its knowledge, this alone does not preclude materiality." (R&R at 20.)

Not so.   Under the actual record of proceedings in this case and the improperly pleaded Complaint, the government cannot evade the Supreme Court's finding that "if the government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material."   *Escobar*, 136 S. Ct. at 2003-2004.   The R&R sidesteps *Escobar*, and instead overreaches for a handful of inapposite and non-binding case law to recommend denial of dismissal.   The R&R's approach is faulty, and it fails to comport with other and more recent decisions in this Court.   *See Strock*, 2019 WL 4640687 at *9.

On top of this, and even though it is undisputed by the government, the R&R fails entirely to address that all of the Complaint's claims were **subject to laws mandating pre-payment agency verification of charges, and post-payment General Services Administration ("GSA") audits**, with accompanying **specific remedies in the event of overcharge**.   *See* 31 U.S.C. § 3527; 41 C.F.R. §102-118.525; 41 C.F.R. §102-118.10; 41 C.F.R. §102-118.35; Military Surface Deployment and Distribution Command Regulation 15-1, Procedure for Disqualifying & Placing Transportation Service Providers in Non-Use (January 10, 2012); 41 C.F.R. § 102-117.255; 41 C.F.R. § 102-118.165; U.S. Freight Transportation Handbook (July 25, 2000); 41 C.F.R. § 102-118.430; 31 U.S.C. § 3726(d); 49 U.S.C. § 13710.   The Complaint fails to allege how Defendants' policies could possibly be "material" to the government's payment decision, when the government undisputedly continued to verify charges, continued to enter contracts and tenders with full

knowledge of Defendants' practices, and failed to initiate any remedies upon awareness of such policies beginning in 2008.[4]

Accordingly, the R&R fails to address recent and applicable case law, and altogether ignores the undisputed facts of this case's actual record, when incorrectly determining that the Complaint's deficient allegations somehow satisfied the FCA's "materiality" standard set forth in a binding United States Supreme Court holding.  Contrary to the R&R's erroneous conclusions, the Supreme Court was abundantly clear in *Escobar* that the "rigorous materiality requirement" should be enforced at the motion-to-dismiss stage with direction that "False Claims Act plaintiffs must . . . plead their claims with plausibility and particularity under FRCP 8 and 9(b) by pleading facts that support allegations of materiality."  *Escobar*, 136 S.Ct. at 1996, 2003, 2004 n.6 (FCA is not "a vehicle for punishing garden-variety breaches of contract or regulatory violations").  Accordingly, the R&R should not be adopted, and Counts I and II should be dismissed for failure to state a claim.  *E.g.*, *Freeman*, 413 F. Supp. 3d at 73 n.2.

C.   **The Government Failed to Allege Scienter**

Despite noting that "[t]he FCA's scienter requirement is rigorous."  (R&R at 21 (quotation omitted)), the R&R concludes in summary fashion that the Complaint sufficiently pleaded scienter. (R&R at 22.)

The R&R fails to address that the Complaint, rather than allege any "knowingly" false submission to the government, merely asserts that Defendants were "motivated by profit" (what for-profit business is not?) and points to a few emails that either: (i) address the possibility that some customers might view Defendants' interpretation as unfair, (Compl. ¶¶ 46-48); or (ii)

---

[4] By failing to follow these statutory and regulatory requirements and remedies, the government has avoided all associated, much-shorter statutes of limitations for its claims and simultaneously prevented Defendants from participating in a less costly, less adversarial, and less dilatory process.

reference an informal discussion, unconnected to any consideration of legal obligation, purportedly reflecting that other carriers disfavored Defendants' interpretation owning to business concerns, (Compl. ¶ 62).   Those two irrelevant allegations do not allege that Defendants had actual knowledge that their interpretation of the reweigh obligations was false, acted with deliberate ignorance of the reasonableness of that interpretation, or somehow recklessly disregarded agency guidance or law expressly warning them off that interpretation—nor can they overcome the government's acknowledgment that it had full knowledge of Defendants' billing practices as of at least 2008.

This is especially true where the government concedes (but the R&R overlooks) that, as of March 1, 2009, the reweigh obligations and notification requirements set forth in Military Freight Traffic Unified Rules Publication-1 ("MFTURP-1") only applied where there was "extra weight and or size" and were silent with respect to negative reweighs—further rendering ambiguous the pre-2009 MFTURP that also does not specify notification of negative reweighs.   (Compl. ¶¶ 37-38).   It was not until half a decade after learning of Defendants' interpretation that the government recognized the ambiguity and amended MFTURP-1 to add ". . . whether the variation is higher or lower."   MFTURP-1, Weight Verification, Section M (July 31, 2013).

The R&R likewise fails to address that it is well-established that a defendant cannot be liable for failing to comply with an ambiguous contractual term.   *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 290-91 (D.C. Cir. 2015); *United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 314–17 (S.D.N.Y. 2011) (defendants' claims were not factually false where, at worst, they "took advantage of the uncertainty in the regulations").   "Strict enforcement of the FCA's knowledge requirement helps ensure that innocent mistakes made in the absence of binding interpretive guidance are not converted into FCA liability[.]" *Purcell*, 807 F.3d

at 183 (quotation omitted).  Moreover, even allegations or "evidence of subjective bad faith or intent of the defendant is irrelevant when there is an objectively reasonable interpretation of the statute that would allow the conduct in question."  *Long v. Tommy Hilfiger, U.S.A., Inc.*, 671 F.3d 371, 377 (3d Cir. 2012).

Nor does the R&R address that the government alone, as drafter of the regulation, had the power to define and guide its interpretation—particularly when the government has been on notice since November 3, 2008 that the Defendants' interpretation allowed them to decide whether to reweigh freight and charge for differences from the bill of lading.  The government never rebutted, and the R&R never discussed, that the doctrine of *contra proferentem* should prevent its *post hac* attempt to now ascribe meaning to an ambiguous term—and to use the FCA to punish Defendants for failing to comply.  *Chapman Law Firm, LPA v. United States*, 103 Fed. Cl. 28, 41–43, 47 (2012); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2168 (2012); *see also Fry Commc'ns, Inc. v. United States,* 22 Cl. Ct. 497, 503 (1991).

The lone case on which the R&R relies to determine that the Complaint's "allegations are not conclusory and contain facts which support a strong inference of scienter," which was not even cited by the government, is also not even an FCA case.  *See Gov't Employees Ins. Co. v. Badia*, No. 13-CV-1720 CBA VMS, 2015 WL 1258218, at *15 (E.D.N.Y. Mar. 18, 2015) (analyzing a "New York common law fraud claim"); (R&R at 22.)  It has no bearing on the merits of Defendants' motion to dismiss, and fails to sustain the R&R's erroneous conclusion.

For these multiple reasons, the R&R's recommendation is "faulty" as a matter of law, and should not be adopted.  Counts I and II should instead be dismissed for failure to state a claim.

### D.    The Government's Common-Law Claims Fail Under Rules 8(a) and 12(b)(6)

The R&R notes that "the complaint does not specify whether state or federal common law applies" to the government's common-law claims.  (R&R at 24.)  However, the R&R then looks

outside the four corners of the Complaint, in violation of Rule 12(b)(6), to endorse the government's dismissal briefing in which it states "that the claims are plainly governed by federal common law, and there is therefore no need to identify which common law applies or invoke supplemental jurisdiction under 28 U.S.C. § 1367." (R&R at 24.) Simply put, it is axiomatic that neither the Magistrate Judge nor the district court is permitted to add allegations to the Complaint, or to excuse failure to comply with Federal Rule of Civil Procedure 8(a). *See, e.g.*, Fed. R. Civ. P. 12(b)(6), 12(d).

Moreover, the R&R's reliance on four pre-*Iqbal* and pre-*Twombly* cases to decide that Rule 8(c) does not require a plaintiff to "plead facts in support of each element of a claim" under these circumstances is flat wrong. (R&R at 25-26.); *see Judd Burstein, P.C. v. Long*, 797 F. App'x 585, 589 (2d Cir. 2019) (affirming dismissal where plaintiff did not meet his "responsibility to adequately plead the elements of his claim," including scienter); *see also Iqbal*, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown— that the pleader is entitled to relief." (quotations omitted)); *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" and "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation" (quotations omitted)).

Nor does *United States v. Electro-Therapeutics, Inc.*, No. 94 CIV. 4008 (DC), 1996 WL 137687, at *5 (S.D.N.Y. Mar. 27, 1996) (another case not cited by any party) remotely stand for

the proposition that the Court may construe "the Government's intent to raise its common law claims under federal common law."  (R&R at 25.)  Rather, the Complaint could assert state-law and/or federal-law claims, *see United States ex rel. Reeves v. Mercer Transportation Co., Inc*., 253 F. Supp. 3d 1242, 1255 (M.D. Ga. 2017), but nothing in the Complaint specifies which law applies, violating Rule 8.  The government's failure to plead any legal basis for its common-law claims unavoidably requires dismissal.  *United States ex rel. Lisitza v. Par Pharm. Companies, Inc*., 276 F. Supp. 3d 779, 809–10 (N.D. Ill. 2017); *see also U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 326 (E.D. Pa. 2012).

Further, the government failed to rebut, and the R&R fails wholly to discuss, that the Complaint did not properly plead its unjust-enrichment and payment-by-mistake claims as alternative to its breach-of-contract claim, which is grounds for dismissal.  *United States ex rel. Reeves v. Mercer Transportation Co., Inc*., 253 F. Supp. 3d 1242, 1255–56 (M.D. Ga. 2017); *United States v. Bollinger Shipyards, Inc*., No. CIV. A. 12-920, 2013 WL 393037, at *15 (E.D. La. Jan. 30, 2013) (citing cases).

Finally, because Count VI failed to specify whether the breach-of-contract claim was governed by state or federal common law, different elements may apply.  Significantly, the government does not allege it actually or adequately performed any of its contractual obligations, especially when the subject contracts contain mandatory procedures for regulatory dispute resolution, as discussed above.  The government also cannot ignore it pleaded no facts supporting any breach-of-contract claim against non-contracting-party YRC Freight.  The R&R ignores each of these dispositive points, rendering the recommendation "faulty" as a matter of black-letter law.

All common-law claims must be dismissed for failure to state a claim.

17

III.     **In the Alternative, Transfer Should Be Granted to the District of Kansas**

If any claims survive dismissal, the R&R should not be adopted with respect to its recommendation that transfer be denied, as such recommendation is "clearly erroneous" and/or "contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) and L.R. Civ. P. 72(a).

The R&R correctly points out that the government does not dispute that this action could have been brought in the District of Kansas, and correctly recites the 28 U.S.C. § 1404 factors. (R&R at 5.)   However, the R&R then improperly ignores several of Defendants' arguments regarding transfer, resulting in a recommendation that is "clearly erroneous" and "contrary to law."

The R&R determines that the "convenience of the witnesses" "weigh against transfer," (R&R at 6), even though acknowledging that Kansas is where Defendants are headquartered and where nearly half of the **government's own material witnesses** are located (as identified and deposed during the **government's actual pre-intervention investigation)**, and that **none** of the other witnesses reside in this district other than Relator.   Yet, the R&R declares that Defendants should have "described the witnesses' testimony so the court can qualitatively evaluate its materiality," (R&R at 6)—apparently missing that the 35 witnesses discussed were identified **only by the government** as crucial to its own claims.   Perhaps most importantly, the R&R ignores that it is **undisputed** that Relator cannot testify **as to the enactment of the policies at issue**, and has very little relevant testimony overall because he was never a manager or decision maker.

The R&R also inexplicably ignores that the convenience of witnesses routinely is found to favor transfer under similar circumstances.   *See, e.g.*, *Mola, Inc. v. Kacey Enterprises, LLC*, No. 10-CV-1045S, 2011 WL 3667505, at *8 (W.D.N.Y. Aug. 21, 2011) (favors transfer where defendants' witnesses were located in Washington and none of plaintiffs' witnesses were located in New York); *Cummings v. Chesapeake Energy Corp.*, No. 16-CV-2338 (VEC), 2016 WL

9527989, at *2 (S.D.N.Y. June 7, 2016) ("clearly" favors transfer to Oklahoma where the principal witnesses "who made the decisions that are at the core of Plaintiffs' Complaint" are senior executives based at defendant's headquarters); *Pausch Med. GmbH v. Pausch LLC*, No. 14-CV-1945 PAC, 2015 WL 783365, at *2 (S.D.N.Y. Feb. 24, 2015) (favors transfer because "Defendant, as a New Jersey-based company, faces clear inconveniences in having to travel to this District to litigate this dispute, particularly since neither its business nor this dispute bear any meaningful connection with this District" and "Defendant's witnesses are located in New Jersey and can shed light on the parties' business relationship").  This factor is weighed the most, and it unquestionably favors transfer to Kansas.

Of nearly identical importance is the locus of operative facts, which the R&R incorrectly asserts is "neutral."  (R&R at 8.)  This conclusion is simply untenable given that the government does not even dispute that no harm was felt in this district, because the contracts and tenders at issue were entered into by the government outside of the Western District of New York, while those contracts and tenders were agreed to or bid on by Defendants in Kansas or Ohio.  It is further undisputed that the invoices at issue per the DOD contracts and tenders were prepared in Kansas or Ohio, that Defendants did not receive DOD payments in the Western District of New York, and that such payments were processed by Defendants in Kansas, Ohio, or India.  However, in an apparent misreading of the government's opposition brief, the R&R decides that "[t]erminals in Buffalo and Rochester are therefore connected to the reweigh activity," but the government **never specified how many of the proffered New York shipments were actually within this district**. Nor does the R&R discuss that the government does not explain how or why the Court should place sole stock in data pertaining to only two years and four months of the alleged eight-year scheme—particularly where the government does not dispute Defendants' data and also declares

that, in any event, "[f]ocusing on the origin or destination location of the shipment does not, however, fully capture the Defendants' shipping and reweigh activity."  (Opp. at 11.)

To the contrary, the Complaint contains no allegations of wrongdoing that pertain to New York at all, and the only connection to the Western District is the terminal where Relator works but where no policy decisions at issue were made.  *See Cummings*, 2016 WL 9527989 at *2 ("Plaintiffs' arguments attempting to place the locus of operative facts in this district also fail. Although it is true that New York investment banks worked on the exchange offer, that the financial adviser was located in New York, that the place of payment, the depository of the securities, and the information agent are located in New York, and that the notes are registered on the New York Stock Exchange, none of those facts is critical to the Plaintiffs' causes of action. This Complaint exclusively concerns Chesapeake's decision to undertake the exchange offer and to structure it to the alleged detriment of . . . existing noteholders.").  Indeed, "[w]here there is no material connection between the district and the operative facts . . . the interests of justice require the transfer of [the] action."  *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 379 (W.D.N.Y. 2018) (quotation omitted).

The R&R also ignores that where causes of action arise exclusively from a contractual relationship and an associated, alleged fraudulent scheme, the locus of operative facts is necessarily where the subject agreements and policies were formed.  *Ritchie Capital Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*, No. 14 CIV. 8513 PAE, 2015 WL 1611391, at *5 (S.D.N.Y. Apr. 10, 2015) (factor favored transfer where agreements were entered into, where payments were received and processed, and where alleged actions took place, because "Minnesota is plainly the nerve center of this case—and the site of every action by U.S. Bank taken in alleged furtherance of the fraudulent scheme."); *Fellner v. Cameron*, No. 09-CV-98S, 2010 WL 681287, at *4–5 (W.D.N.Y.

Feb. 24, 2010) (transfer favored where agreements were negotiated, witnessed, and executed in Florida); *Cain v. Twitter, Inc.*, No. 17 CIV. 122 (PAC), 2017 WL 1489220, at *4 (S.D.N.Y. Apr. 25, 2017) (locus of the operative facts is where defendant made its decisions that plaintiffs allege result in liability).  However, the locus of operative facts occurred in Kansas, so Kansas citizens have a greater interest in this case.  The R&R seemingly even recognizes this, although it fails to give it the due weight required by case law.  (R&R at 8 ("[a]ssuming, arguendo, that this factor weighs in favor of transfer to Kansas. . .").

The R&R also fails to address that as to the location of documents and access to proof factor, it was (and still is) undisputed that there is greater convenience to Defendants in having trial closer to the location of Defendants' physical documents and records custodians.  *See In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013).  This factor weighs in favor of transfer.

Next, the R&R asserts that Defendants failed to "prove" that the government has greater resources, (R&R at 9), but the R&R ignores that it is beyond serious dispute that "the Government has litigation resources available to it across the country in a way that a private litigant may not." *United States v. Stamps*, No. 18-CV-1106 (BMC), 2018 WL 6031155, at *2 (E.D.N.Y. Nov. 16, 2018); *see generally U.S. ex rel Poehling v. United Health Group, Inc., et al.*, Case No. 2:16-cv-08697-MWF-SS (C.D. Cal.) (example of the government of this district's willingness to support FCA cases with enormous resources).  Indeed, it is uncontroverted that the government to date has pursued this matter (depositions, interviews, etc.) in various locations, including Kansas, far afield from the Eastern District of New York with relative ease.  This factor must also weigh in favor of transfer to Kansas.

Relatedly, the R&R impermissibly ignores entirely that the convenience of the parties weighs in favor of transfer, and appears to conclude in one sentence, without any analysis, that

transfer would merely "shift" the burden.  (R&R at 7.)  However, the R&R fails altogether to address that the auditor and two lawyers the government references at page 9 of its opposition are located outside of New York, so not even the government's entire team is located in this district, whereas all of the Defendants are located in Kansas.  Under circumstances such as these, federal courts regularly transfer False Claims Act ("FCA") cases, despite protestations of "inconvenience" by government attorneys.  *See United States v. Nature's Farm Prod., Inc.*, No. 00CIV. 6593(SHS), 2004 WL 1077968, at *4 (S.D.N.Y. May 13, 2004) (finding government's "presence in New York" does not "properly weigh against transfer" because it "is no more a resident of the Southern District of New York than it is of the Northern District of California" and "[a]lthough the government attorneys assigned to this matter are located in this district, the United States government clearly also has attorneys resident in the Northern District of California."); *United States ex rel. Thomas v. Duke Univ.*, No. 4:13-CV-17, 2017 WL 1169734, at *2 (W.D. Va. Mar. 28, 2017) (rejecting argument that U.S. Attorney's Office "has spent years investigating this case, and if this case was transferred, new prosecutors . . . would need to start 'from scratch,'" where attorneys, agents, and investigators interviewed witnesses all over the country and "U.S. Attorney's Offices regularly coordinate on matters across jurisdictional lines").

Indeed, in an FCA case currently pending in the Central District of California, dozens of DOJ attorneys, including those based in the Western District of New York (and some who appear in this case), have entered their appearances.  *See Poehling*, Case No. 2:16-cv-08697-MWF-SS (C.D. Cal.).  The R&R should not have ignored this *Poehling* case, which unequivocally vitiates the government's assertions of inconvenience.  This factor weighs strongly for transfer to Kansas.

Notwithstanding the factors' clear weight in favor of Kansas, the R&R erroneously concludes that the "totality of the circumstances" and the "interests of justice" weigh against

transfer.  (R&R at 9.)  However, the R&R evaded that it is undisputed that a plaintiff's choice of forum "is not entitled to the weight it is generally accorded when [as here] the forum chosen has no material connection with the action."  *WD Encore Software, LLC*, 2016 WL 1056628 at *5 (quoting *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000)).  Neither the R&R nor the government can get around the fact that there are zero allegations pertaining to New York in the Complaint, that none of the alleged fraudulent decision-making occurred in New York, and that none of the contractual formation or payment-related performance occurred in New York.  Both the R&R and the government also improperly ignore that in an FCA case, "[b]ecause the United States government can adequately litigate in multiple fora, while its choice of forum is properly granted significant weight, it is not a choice that deserves the same level of deference as does a choice by a plaintiff to bring an action in her home district."  *Nature's Farm Prod., Inc.*, 2004 WL 1077968 at *6 (internal quotations and alterations omitted).

Lastly, the R&R asserts that "transfer would likely cause an undue delay," even recognizing "the lighter caseload and quicker disposition of matters in the District of Kansas," but remarkably ignores that Defendants **have had to wait for the R&R for eleven months** (oral argument was held on August 12, 2019), and are now having to pursue the instant Objections.  The time lapse in this case alone, not to mention the decade-long pre-intervention investigation, more than amply proves the point that the interests of justice weigh in favor of transfer.  This is particularly true given the *Poehling* example ignored by the R&R, and the fact that the government does not dispute that this is early-stage litigation where discovery has not even commenced.  And, the R&R ignores that most importantly, "the administration of justice is better served when the action is litigated in the forum that encompasses the locus of operative facts and thus may have a particular interest in the proper resolution of the dispute."  Wright & Miller, 15 Federal Practice

and Procedure § 3854, at 360-61.

Accordingly, the R&R is clearly erroneous, and transfer must be granted if dismissal is not.

## CONCLUSION

Based on the foregoing, the R&R should not be adopted.  Instead, the Court should dismiss the government's remaining claims, Counts I, II, IV, and V, with prejudice.  If any claims survive, the Court should order transfer to the District of Kansas.  Defendants respectfully request all such other and further relief as the Court deems just and proper.


Dated:  July 31, 2020
New York, New York

DENTONS US LLP

BY:   /S/ *SEAN CENAWOOD*
        Sean Cenawood, NY2463750
        1221 Avenue of the Americas
        New York, NY 10020-1089
        Telephone: (212) 768-6700
        sean.cenawood@dentons.com

        Stephen L. Hill, Jr., MO36033
        Sara M. Holzschuh, KS24864
        4520 Main Street, Suite 1100
        Kansas City, Missouri 64111
        Telephone: (816) 460-2400
        stephen.hill@dentons.com
        sara.holzschuh@dentons.com
        Pro Hac Vice Appearance

        ATTORNEYS FOR DEFENDANTS

US_Active\115198107\V-2

24