**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

UNITED STATES OF AMERICA, *ex rel.*
JAMES HANNUM,

                         Plaintiffs,

    vs.                                            Case No. 08-CV-0811-RJA-MJR

YRC FREIGHT, INC.; ROADWAY
EXPRESS, INC.; and YELLOW
TRANSPORTATION, INC.

                         Defendants.
_____

**MEMORANDUM IN SUPPORT OF**
**UNITED STATES' MOTION TO STRIKE AFFIRMATIVE DEFENSES**

In its Complaint, the United States alleged that YRC Freight, Roadway Express, and Yellow Transportation ("the Defendants") violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, and are subject to various common law claims, by knowingly overcharging the Department of Defense ("DOD") for inflated freight costs and fraudulently inducing DOD to accept their offers or "tenders" of freight services.  (ECF 72.)

In their Answer, the Defendants assert twelve affirmative defenses.  Although it is not always clear what particular defense the Defendants are asserting, many of the defenses appear to rest on the premise that, even if the Defendants engaged in the alleged conduct, DOD's actions effectively preclude the United States from recovering under either the FCA or common law.  Other asserted defenses rely on specific statutes or doctrines, such as the FCA's provision for reduced damages set forth at 31 U.S.C. § 3729(a)(2).  In addition, the Defendants have repackaged their prior motions and objections as an affirmative defense.

As explained in more detail below, many of these defenses either fail as a matter of law or are inadequately pled. The United States thus moves to strike the Defendants' First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Affirmative Defenses. Striking these defenses will allow the parties to focus on the core issues of the case rather than engaging in unnecessary discovery. *See, e.g.*, *S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1988), *aff'd sub nom. S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir. 1989) (explaining that "a defense should be struck when it is clearly irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense") (citation omitted).

### I.    Standard of Review

Federal Rule of Civil Procedure ("Rule") 12(f) allows courts, either on their own or upon a party's motion, to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Accordingly, courts have broad discretion over motions to strike. *See, e.g.*, *Wine Markets Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998) (relying on discretion to consider the merits of an untimely motion to strike).

The Second Circuit has defined an affirmative defense as an "assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quotation omitted). At a minimum, affirmative defenses must meet the notice pleading standards of Rule 8, including the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *E.g. GEOMC Co. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 96 (2d Cir. 2019). Parties must, therefore, support their defenses with "some factual allegations to make them plausible." *Id.*

at 98-99.  This standard ensures that plaintiffs are provided with "fair notice, buttressed by sufficient facts, of the affirmative defenses that the defendant intends to assert; thus allowing the plaintiff an opportunity to knowledgeably respond." *Godson v. Eltman, Eltman & Cooper, P.C.*, 285 F.R.D. 255, 259 (W.D.N.Y. 2012).  Factually deficient affirmative defenses should therefore be stricken.  *Calmare Therapeutics*, 918 F.3d at 96.

Moreover, an affirmative defense that is legally deficient "prejudices the plaintiff because it will needlessly increase the duration and expense of litigation."  *United States ex rel. Mandel v. Sakr*, No. 17-CV-907S, 2021 WL 1541490, at *1 (W.D.N.Y. Apr. 20, 2021) (citation omitted).  Thus, legally deficient defenses "should be stricken to eliminate the delay and unnecessary expense of litigating the invalid claim."  *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13 CIV. 6705 DLC, 2014 WL 1673351, at *2 (S.D.N.Y. Apr. 28, 2014).

In short, a motion to strike an affirmative defense should be granted if the defense is either (1) not plausibly pled or (2) legally insufficient.  *Mandel*, 2021 WL 1541490, at *1 (citing to *Calmare Therapeutics*, 918 F.3d at 97-98).

## II.   ARGUMENT

As set forth in more detail below, several of the Defendants' affirmative defenses are deficient and should be struck on legal or factual grounds.

### A.  The First Affirmative Defense:  Deficient Pleadings

The Defendants assert that the United States' claims were improperly pled and failed to adequately state "any claim" upon which relief can be granted.  (ECF 118, at 36-37).  The Court, however, has already addressed and ruled on these arguments following the Defendants' Motion to Dismiss and subsequent Objections to the Magistrate's Report and

Recommendation. (ECF 101 and ECF 111). Relitigating the sufficiency of the Complaint would thus be redundant and serve only to further delay the resolution of this case. Accordingly, this defense should be stricken. *See, e.g.*, *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *13–14 (S.D.N.Y. June 25, 2020); *E.E.O.C. v. SSM & RC Inc.,* No. 05-CV-6495-CJS, 2007 WL 1613580, at *2 (W.D.N.Y. June 1, 2007) (striking affirmative defense because the court had already ruled that the complaints were not subject to dismissal for failure to state claim); *see also Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010) (citing cases where courts struck the affirmative defense of failure to state a claim).

For example, in *Town & Country*, the court applied the law of the case doctrine, which holds that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." 2020 WL 3472597, at *13 (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2001)). The court also noted that the defendants had offered "no reason" for it "to reconsider any of the issues previously decided in ruling on the motion to dismiss." *Id.* The court thus struck the defendants' affirmative defense in so far as it sought "to relitigate the legal sufficiency of claims already decided."

Nonetheless, it is true that some courts have refrained from striking affirmative defenses predicated upon a failure to state a claim in the plaintiff's complaint. *See, e.g.*, *Kochan v. Kowalski*, 478 F. Supp. 3d 440, 451 (W.D.N.Y. 2020) (citing *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 432 (S.D.N.Y. 2010)). This hesitancy to strike the defense generally stemmed from the belief that its inclusion was not prejudicial to plaintiffs. *Id.* But prejudice to the plaintiff is no longer required to strike an affirmative defense in the Second Circuit. *See, e.g., Calmare Therapeutics*, 918 F.3d at 96-98.

4

In *Calmare Therapeutics*, the Court of Appeals clarified that striking affirmative defenses did not depend on finding that the defense was factually deficient, legally deficient, *and* prejudicial to the plaintiff. *Id.* at 96-97. To the contrary, the Second Circuit found that either a factual or legal deficiency was, standing alone, sufficient grounds for striking an affirmative defense—and that prejudice should mainly be considered in relation to the timing of the affirmative defense, rather than the substance. *Id.* at 98-99.

In short, the Defendants' First Affirmative Defense is legally insufficient because it seeks to relitigate the Court's rulings on the Motion to Dismiss. Under *Calmare Therapeutics*, the defense should be stricken for that deficiency alone. 918 F.3d at 98 ("There is no dispute that an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims").

### B. The Second Affirmative Defense: The Economic Loss Rule

The economic loss rule is a common law doctrine that can be used to prevent plaintiffs from recovering purely economic losses under common law tort claims. *See, e.g.*, *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.,* No. 20-CV-2130 (MKB), 2021 WL 3861995, at *10 n. 12 (E.D.N.Y. Aug. 30, 2021). The rule's actual application, however, is often narrower. For example, the Second Circuit has carved out cases involving liability for the violation of a professional duty. *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 18 (2d Cir. 2000). In addition, most federal district courts applying New York common law "have declined to apply the economic loss rule to intentional torts such as fraud." *Cargo Logistics Int'l,* 2021 WL 3861995, at *10 n. 12 (citing cases) (quotation omitted).

The Defendants' Second Affirmative Defense nevertheless maintains that the United States' claims are barred by the economic loss rule. (ECF 118, at 37). But even under the

5

broadest interpretation of the rule, it does not apply in this case. The United States has pled claims under the FCA, which is an independent federal cause of action and thus not a common law tort covered by the economic loss rule. Indeed, the recovery limitation imposed by the economic loss rule is at odds with the very purpose of the FCA, which is to help the government recover the financial losses it suffers due to fraud. *See Cook Cty., Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 129 (2003).

The economic loss rule also does not apply to the United States' common law claims of unjust enrichment, payment by mistake, and breach of contract. These are contractual or quasi-contractual causes of action and are thus outside the scope of the economic loss rule. *See, e.g.*, *Trafalgar Power*, 227 F.3d at 16-18 (explaining that the economic loss rule only can apply to tort claims); *see also, e.g., United States v. DynCorp Int'l, LLC*, 253 F. Supp. 3d 89, 114 (D.D.C. 2017) (explaining that unjust enrichment and payment by mistake are quasi-contractual claims).

### C. The Third Affirmative Defense: Waiver, Consent, Ratification, Unclean Hands, Estoppel, and Failure to Mitigate Damages

In their Third Affirmative Defense, the Defendants combine several affirmative defenses into one. But none of these defenses are valid.

#### i. Waiver, Consent, and Ratification

Waiver is the intentional relinquishment of a known right. *E.g. United States v. RePass*, 688 F.2d 154, 158 (2d Cir. 1982). The rights of the United States may not be waived by the unauthorized acts of its agents; rather, "the waiver must be made by one having the authority to do so." *United States v. Honeywell*, 841 F. Supp. 2d 112, 114 (D.D.C. 2012) (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)).

Here, the authority to bring FCA cases, as well as claims under the common law, are vested in the Attorney General. 31 U.S.C. § 3730(a); 5 U.S.C. § 516 (reserving the conduct of litigation in which the United States is a party "to officers of the Department of Justice, under the direction of the Attorney General"). The Defendants have not alleged, nor could they, an intentional relinquishment by the Attorney General or any DOJ employee acting under the Attorney General's direction. Just the opposite, DOJ has exercised its right to sue by filing this action. *See Honeywell*, 841 F. Supp. 2d at 115 (striking defense of waiver because defendant did not present "any support for the proposition that Department of Justice employees acted with the Attorney General's authority to waive the right to bring an FCA case"); *see also Mandel* 2021 WL 1541490, at *3 (requiring defendants to plead sufficient facts regarding waiver by the Attorney General before asserting defense in an FCA case).

### ii.   Consent and Ratification

Similarly, the Defendants cite consent and ratification as part of this affirmative defense, but do not allege any facts in support other than a conclusory assertion that the United States had an obligation to "raise objections to the alleged conduct at issue when fully aware of such conduct and continuing to make payments to Defendants." (ECF 118, at 37). Such conclusory assertions are factually insufficient, as they fail to provide enough facts for the defense to be plausible. For example, the United States has alleged that the Defendants defrauded DOD over the course of many years, but the Defendants' Answer does not detail when or how this supposed consent and ratification occurred. The Defendants do not even name DOJ as the government entity that consented to or ratified the Defendants' fraud, which is a fatal flaw for these defenses. *See, e.g.*, *U.S. ex rel. Dye v.*

*ATK Launch Sys., Inc.,* No. 1:06-CV-39 TS, 2008 WL 4642164, at *3 (D. Utah Oct. 16, 2008) (striking ratification defense because the defendant did not allege that DOJ ratified its conduct); *United States v. Cushman & Wakefield, Inc.*, 275 F. Supp. 2d 763, 771 (N.D. Tex. 2002) (striking ratification defense when defendant alleged that postal service employees ratified conduct "by failing to inspect the mail or to monitor the trust accounts" at issue).

      The consent and ratification defenses also fail as a matter of law because they are equitable defenses that cannot generally be asserted against the United States. *See U.S. ex rel. Parikh v. Citizens Med. Ctr.*, 302 F.R.D. 416, 420 (S.D. Tex. 2014) (recognizing "longstanding presumption" that consent and ratification cannot be asserted against the government). This presumption stems from *Office of Personnel Management v. Richmond*, 496 U.S. 414, 438 (1990), in which the Supreme Court held that the government did not have to pay illegal benefits, notwithstanding erroneous advice provided by a government employee to the claimant, because the Appropriations Clause of the Constitution forbids federal funds to be paid from the Treasury unless "it has been appropriated by an act of Congress." This principle also applies to protect the government when it is seeking to recover federal money that Congress did not approve, such as false or fraudulent claims. *See, e.g., United States v. Inc. Vill. of Island Park*, 888 F. Supp. 419, 452–53 (E.D.N.Y. 1995) (relying on *Richmond* to deny equitable defense because "the same result would necessarily follow in an action for return of funds wrongfully paid from the federal treasury").

      **iii.    Unclean Hands and Equitable Estoppel**

      Courts have held that unclean hands and equitable estoppel are not valid affirmative defenses in cases like this where the United States is vindicating the public interest by trying to recover federal funds. *E.g. Mandel* 2021 WL 1541490, at *2 ("unclean hands is not

available as a defense against the government in a FCA case"); *United States v. Manhattan-Westchester Med. Servs., P.C.*, No. 06 CIV.7905 WHP, 2008 WL 241079, at *4 (S.D.N.Y. Jan. 28, 2008); *S.E.C. v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1988), *aff'd sub nom. S.E.C. v. Calvo*, 891 F.2d 457 (2d Cir. 1989) (unclean hands is not available when the government is trying to enforce a public interest); *see also Richmond*, 496 U.S. at 426 ("judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized").  In *Manhattan-Westchester*, the court held that unclean hands and equitable estoppel cannot be invoked against the government when it had alleged FCA violations and related common law causes of action.  2008 WL 241079, at *4.  The court struck these affirmative defenses because the United States was trying "to enforce a congressional mandate in the public interest" and recover funds disbursed from the Treasury.  *Id.*

While some courts have allowed defendants to assert unclean hands and equitable estoppel as defenses against the government, they have done so only in very limited circumstances.  The Second Circuit has held, for instance, that "equitable estoppel is not available against the government except in the most serious of circumstances, and is applied with the utmost caution and restraint." *Rojas–Reyes v. Immigration & Naturalization Serv.*, 235 F.3d 115, 126 (2d Cir. 2000).  Indeed, these courts limit equitable estoppel to instances where there was "affirmative misconduct and not mere negligence" that the defendants relied on to its detriment.  *E.g. United States v. Flaherty*, No. 88 CV 3275, 1997 WL 139158, at *1 (E.D.N.Y. Mar. 19, 1997).

Likewise, to plausibly assert unclean hands as an affirmative defense against the government, the purported government misconduct must be "egregious," have occurred

9

during the government's investigation, and directly cause prejudice against the defendant that "rises to a constitutional level." *E.g. Fed. Trade Comm'n v. Consumer Health Benefits Ass'n*, No. 10CIV3551ILGRLM, 2011 WL 13295634, at *4 (E.D.N.Y. Oct. 5, 2011).  For example, in an enforcement action brought by the SEC, the defendants needed to show, at a minimum, that the SEC had participated in a "fraudulent scheme" against them. *Sec. & Exch. Comm'n v. Laura*, No. 18CV5075NGGVMS, 2020 WL 8772252, at *3 (E.D.N.Y. Dec. 30, 2020)

To the extent these defenses are legally available in this case, the Defendants have failed to adequately assert unclean hands and equitable estoppel against the government, because they have not alleged egregious government behavior.  (ECF 118, at 37).  At most, the Defendants have alleged that the government improperly administered its contracts or failed to stop doing business with the Defendants. (*Id.*)  This is not close to the type of misconduct that allows defendants to assert unclean hands and equitable estoppel against the government. *See, e.g.*, *Laura*, 2020 WL 8772252, at *3.  In fact, courts have held that the government's failure to take swifter or harsher action against a defendant does not unlock these equitable defenses.  *See S.E.C. v. Durante*, No. 01 CIV. 9056 DAB AJP, 2013 WL 6800226, at *13 (S.D.N.Y. Dec. 19, 2013), *report and recommendation adopted*, No. 01 CIV. 9056 DAB, 2014 WL 5041843 (S.D.N.Y. Sept. 25, 2014), *aff'd*, 641 F. App'x 73 (2d Cir. 2016); *S.E.C. v. KPMG LLP*, No. 03 CIV. 671 (DLC), 2003 WL 21976733, at *3 (S.D.N.Y. Aug. 20, 2003) (striking unclean hands defenses even where the SEC had failed to identify a violation of generally accepted accounting principles for an accounting firm).  In *Durante*, the court recognized that "the Second Circuit has repeatedly held that mere delay by government agencies" are not affirmative misconduct without evidence that the delay was

"deliberate or the result of wronging by a U.S. official." 2013 WL 6800226, at *13 (citing cases). Accordingly, the court in *Durante* found that the nine year gap between one of the defendant's depositions and the SEC's enforcement action was neither tantamount to a representation that he was in compliance nor sufficient for an estoppel defense. *Id.*

### iv.   Failure to Mitigate Damages

The Defendants also assert the United States' failure to mitigate damages as an affirmative defense. But failure to mitigate damages is not a valid defense to the United States' claims under the FCA. This is because the United States "has no duty to mitigate damages in fraud actions." *E.g. Mandel* 2021 WL 1541490, at *2 (finding affirmative defense unavailable for government's claims of FCA violations).

District courts are split on whether a failure to mitigate damages is a valid defense to common law claims arising from the same fraud as an FCA action. *Compare U.S. ex rel. Monahan v. Robert Wood Johnson Univ. Hosp. at Hamilton*, No. CIV. A. 02-5702 JAG, 2009 WL 4576097, at *8 (D.N.J. Dec. 1, 2009) (holding that the government need not mitigate damages in fraud actions, including the FCA and related common law claims); *with United States v. Berkeley Heartlab, Inc.*, No. 9:11-CV-1593-RMG, 2017 WL 1533434, at *6 (D.S.C. Apr. 27, 2017) (recognizing the government may have a potential duty to mitigate damages in common law claims in an case brought under the FCA).

In this District, however, one court recently concluded that, in the context of an FCA case, the defense of failure to mitigate damages was "unavailable" for all the claims at issue, including unjust enrichment and payment by mistake. *Mandel*, 2021 WL 1541490, at *2. This is the more logical approach, as otherwise the government's ability to fully pursue taxpayer dollars disbursed under false pretenses would depend, in part, on its ability to stop

11

the fraud in the first place. Indeed, the holding in *Mandel* is consistent with the well-establish principle that victims of misconduct are not obligated to uncover the wrongdoing that hurt them. *See United States v. Holland,* 394 F. App'x 766, 768 (2d Cir. 2010) ("an innocent crime victim has no duty to detect a crime being perpetrated against it"); *United States v. Agnew*, 171 F. App'x 376, 379 (2d Cir. 2006); *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) (collecting cases and rejecting argument that the legality of fraud can depend on the susceptibility of the victim); *Toepleman v. United States*, 263 F.2d 697, 700 (4th Cir.1959), *cert. denied*, 359 U.S. 989 (1959) ("Having by his fraud thrust this burden on the United States, the [defendant] cannot be exonerated by the failure of the Government to cast it off at the most propitious time"). *Agnew* is especially instructive, as the Second Circuit found that the Department of Labor did not have a duty to mitigate its damages once it knew there was a criminal investigation into the defendant's federal employee compensation fraud. 171 F. App'x 379. Government agencies should be treated similarly in the FCA context, rather than forced to mitigate damages in order to preserve the United States' common law remedies.

### D. The Fourth Affirmative Defense:  Statutes of Limitation

The Defendants assert various statutes of limitation as their fourth affirmative defense. Yet none of the provisions the Defendants cite are the operative statutes of limitation for the FCA, 31 U.S.C. §§ 3731(b) and (c), or common law contractual or quasi-contractual remedies, 28 U.S.C. § 2415(a). These statutes of limitation run for six years and both relate back to the filing of the Relator's complaint. 31 U.S.C. § 3731(c) (when the United States intervenes in an FCA case, its complaint relates back to the relator's original filing for FCA purposes); *see also, e.g., U.S. ex rel. Frascella v. Oracle Corp.*, 751 F. Supp. 2d

842, 854 (E.D. Va. 2010) (holding that the United States' FCA and common law claims related back to the date the relator filed the original *qui tam* complaint).

Therefore, to assert a plausible statute of limitations defense, the Defendants would have to allege that the violations and conduct at issue preceded November 3, 2002—six years before the Relator filed his complaint. The Defendants have not done so, nor can they, as the alleged fraudulent scheme that is the core of this case only began in September 2005. The Court should thus strike this affirmative defense.

### E. The Sixth Affirmative Defense: Unknown

The Defendants maintain that the United States' claims are barred because the government failed to object to the Defendants' misconduct and failed to take various actions that would have averted or mitigated the Defendants' fraud. (ECF 118, at 38). The Defendants do not, however, name or specify what defenses they are asserting. The United States is thus deprived of the "fair notice" of affirmative defenses that an answer is supposed to provide. *Godson v. Eltman, Eltman & Cooper, P.C.*, 285 F.R.D. 255, 259-60 (W.D.N.Y. 2012) (striking affirmative defenses for insufficient pleading). In *Godson*, the court struck affirmative defenses that were identified, but not supported by any facts. *Id.* Here the United States has even less notice, as the affirmative defenses themselves were not identified and should therefore be struck.

Although it is impossible to be certain without more clarity from the Defendants, this affirmative defense appears to rely on the same premises as the hodgepodge of equitable defenses set forth in the Third Affirmative Defense. (*See* ECF 118, at 37). If the Sixth Affirmative Defense relies on the same legal principles as the Third, it should likewise be struck for the legal deficiencies identified above.

13

### F. The Seventh Affirmative Defense: 31 U.S.C. § 3729(a)(2)

The Defendants allege that the United States "would be unjustly enriched should any of its claims prevail" and that "any damages . . . must be reduced pursuant to 31 U.S.C. § 3729(a)(2)."

Section 3729(a)(2) gives courts the discretion to assess reduced FCA damages if a defendant (1) provided DOJ officials "responsible for investigating false claims violations" with all information known about the violation within 30 days of the defendant obtaining the information, (2) fully cooperated with the government's investigation, (3) provided the relevant information when there was no pending FCA action, and (4) "did not have actual knowledge" about any related government investigation. The Defendants thus would have had to allege that they informed DOJ of their skewed reweigh practices before the Relator filed his *qui tam* complaint in 2008 and within 30 days of the their implementation of these practices. The Defendants have not pled any of these facts, nor can they in an amended pleading. Consequently, this affirmative defense should be struck as factually deficient. *See Calmare Therapeutics*, 918 F.3d at 96 (applying plausibility standard to affirmative defense pleadings).

### G. The Ninth Affirmative Defense: Accord and Satisfaction

The Defendants assert that the United States' claims are barred, or its recovery reduced, because the government "received accord and satisfaction" by accepting the Defendants' performance without objection. (ECF 118, at 39).

Accord and satisfaction requires an agreement between two parties, in which one party agrees to perform or provide, and the other party agrees to accept, "something other than that which is claimed to be due." *Chesapeake & Potomac Telephone Co. v. United States*,

14

654 F.2d 711, 715 (Ct. Cl. 1981).  To successfully assert accord and satisfaction as a defense, the Defendants must prove that the government officials involved in this alleged agreement "had authority to settle the dispute." *U.S. ex rel. Veltz v. Allegany Rehab. Assocs., Inc.,* No. 01-CV-190S, 2011 WL 1042194, at *4 (W.D.N.Y. Mar. 18, 2011); *accord Sec. & Exch. Comm'n v. Laura,* No. 18CV5075NGGVMS, 2020 WL 8772252, at *4 (E.D.N.Y. Dec. 30, 2020)*; United States ex rel. Mayman v. Martin Marietta Corp.*, 894 F. Supp. 218, 224 (D. Md. 1995) (citing *Edwards v. United States*, 22 Cl. Ct. 411, 421 (1991).

The Defendants have not alleged with any specificity which government agency provided the supposed accord and satisfaction.  Assuming *arguendo* that it was DOD, such an agreement would not provide a viable accord and satisfaction defense because DOD does not have the authority to resolve FCA claims or the United States' common law remedies when fraud is involved.

Instead, the authority to settle FCA claims is vested in the Attorney General and DOJ.  31 U.S.C. §§ 3730(b)(1) and (c)(2)(B); *see also, e.g., Veltz*, 2011 WL 1042194, at *4. Moreover, government contracting officers have no authority to settle fraud claims.  41 U.S.C. § 7103(c)(1); 48 C.F.R. § 33.210(b).  This restriction is not limited to express allegations of fraud, but includes claims "involving fraud," such as common law contractual or quasi-contractual claims.  *United States v. First Choice Armor & Equip., Inc.*, 808 F. Supp. 2d 68, 80 (D.D.C. 2011) (breach of contract); *United States v. Rockwell Int'l Corp.*, 795 F. Supp. 1131, 1138–39 (N.D. Ga. 1992) (breach of contract, unjust enrichment, and payment by mistake).

This affirmative defense is thus fatally flawed.  Like their waiver defense, the Defendants have not alleged that DOJ settled the claims at issue, let alone provided

15

supporting facts that plausibly support the allegation that DOJ would settle the claims and then sue the Defendants for the very same conduct. The Court should therefore strike the Ninth Affirmative Defense.

### H. The Tenth Affirmative Defense: Unknown

Like the Third and Sixth Affirmative Defenses, the Tenth Affirmative Defense maintains that the United States' claims are barred because the government failed to object to the Defendants' misconduct and failed to take various actions that would have averted or mitigated the Defendants' fraud. (ECF 118, at 39). Again, it is not clear how this defense is materially different than the others, let alone what specific defenses the Defendants are asserting. And to the extent that the Defendants are relying on the same equitable doctrines as the Third Affirmative Defense, the Tenth Affirmative Defense has the same legal deficiencies and should be struck.

### III. CONCLUSION

For the forgoing reasons, the United States respectfully requests this Court strike the Defendants' First, Second, Third, Fourth, Sixth, Seventh, Ninth, and Tenth Affirmative Defenses.

[*signatures to follow on next page*]

Dated: October 29, 2021                    Respectfully submitted,

                                                                            BRIAN M. BOYNTON
Acting Assistant Attorney General

TRINI E. ROSS
United States Attorney for the
Western District of New York

/s/David M. Coriell
DAVID M. CORIELL
Assistant United States Attorney
138 Delaware Avenue
Buffalo, New York 14202
Tel: 716-843-5731
david.coriell@usdoj.gov


/s/ Benjamin Young
JAMIE A. YAVELBERG
ROBERT MCAULIFFE
BENJAMIN YOUNG
United States Department of Justice
Civil Division
Ben Franklin Station
PO Box 261
Washington, DC 20044
Tel: (202) 616-0291

*Attorneys for the United States*

17